**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN BARTIS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 4:13-CV-00657-JAR |
| | ) | |
| BIOMET, INC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Disqualify Bachus & Schanker LLC ("Bachus & Schanker"). (Doc. 58). The Court previously denied the motion in a short Order (Doc. 70) to allow this protracted litigation to proceed expeditiously, and in light of a pending related trial in *Bayes v. Biomet, Inc.* (No. 4:13-CV-00800-SRC). This supporting memorandum more thoroughly explains why this Court declines to disqualify Bachus & Schanker.

## I.    BACKGROUND

### A.  Procedural History

This case concerns hip replacement surgeries implanting a M2a-Magnum metal-on-metal ("MoM") artificial hip (the "Magnum") manufactured and marketed by Defendants (collectively, "Biomet"). Plaintiff John Bartis filed suit in this Court on April 8, 2013. (Doc. 1). Hundreds of similar cases, including Plaintiffs', were subsequently brought into the *In re Biomet M2a Magnum Hip Implant Products Liability Litigation*, MDL-2391 (N.D. Ind.). Many of these claims settled, and Plaintiffs' cases were among those remanded to the transferring courts in 2018. Plaintiffs then filed a motion to consolidate, which this Court granted. (Doc. 54). Biomet seeks to disqualify Plaintiffs' chosen counsel, Bachus & Schanker, because of an alleged conflict of interest. Judge

1

Stephen Clark of this district denied a virtually identical motion. *Bayes v. Biomet, Inc.*, No. 4:13-CV-00800-SRC, 2020 WL 680890, at *8 (E.D. Mo. Nov. 12, 2020). This Court finds Judge Clark's reasoning persuasive and has reached a similar conclusion.

B. History of Zimmer Biomet

A brief description of the corporate history of Zimmer Biomet is necessary. Biomet began to market and sell the Magnum in the early 2000s. (Doc. 61 at 3). Zimmer, Inc. ("Zimmer") was one of its primary competitors, selling orthopedic devices like the Durom Cup, another MoM hip implant. (*Id.*). The Durom Cup was recalled in 2008, and an MDL was formed in 2010. *In re Zimmer Durom Hip Cup Prods. Liab. Litig.*, MDL No. 2158 (D.N.J.). In 2012, the MDL concerning the Magnum was established. Finally, in 2015, Zimmer and Biomet merged when Zimmer Holdings, Inc. acquired LVB Acquisitions, Inc., the parent company of Biomet, Inc. and its subsidiaries. (Doc. 59 at 3). The merged company is known as Zimmer Biomet. Defendants are all wholly-owned subsidiaries of Zimmer and Zimmer Biomet Holdings. (*Id.*).

C. Legal Representation of Zimmer and Biomet

The law firm of Faegre Drinker Biddle & Reath LLP ("Faegre") represented Zimmer in the Durom Cup litigation and certain other matters. (*Id.* at 1-5). Mary Jaclyn Thompson ("Thompson") was an Associate in Faegre's Denver office and a member of the product liability practices group from September 2014 to January 2017. (Doc. 59-4 at ¶ 4). During this time, Thompson billed over 2,500 hours defending Zimmer Biomet in product liability matters, with the vast majority of such time involving work on the Durom Cup litigation. (*Id.* at ¶¶ 7-22). It appears that Thompson entered one appearance on behalf of Biomet, Inc. in a Utah case unrelated to the Magnum. (Doc. 59 at 6; Doc. 61 at 4).

In August 2019, Thompson joined Bachus & Schanker, who represents Plaintiffs in this case. (Doc. 61 at 5). Thompson works in the personal injury department of the firm, and there is no evidence to suggest that Thompson has worked on this case or disclosed any confidential information regarding Zimmer Biomet. Biomet contends that Bachus & Schanker should be disqualified from representing Plaintiffs because the firm employs an attorney (albeit with no involvement in this case) who previously represented an entity affiliated with Biomet in separate litigation concerning arguably similar legal issues.[1] Plaintiffs respond that they are merely "caught in the cross-fire resulting from Biomet's unfortunate litigation tactics" in attempting to delay trial in *Bayes*. (Doc. 61 at 1).

## II.    LEGAL STANDARD

The Rules of Professional Conduct of this Court are those adopted by the Supreme Court of Missouri. E.D. Mo. L.R. 12.02. The Supreme Court of Missouri has adopted the Rules of Professional Conduct ("Model Rules"), and this Court has determined that its local rule intends to apply the Model Rules. *See* Mo. S. Ct. R. 4; *Commonwealth Land Title Ins. Co. v. St. John's Bank & Trust Co.*, No. 4:08-CV-1433 CAS, 2009 WL 3069101, at *3-4 (E.D. Mo. Sept. 22, 2009) (citations omitted). Missouri Supreme Court Rule 4-1.9(a) provides that a "lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." Per Missouri Supreme Court Rule 4-1.10, any conflict held by an attorney is imputed to all attorneys at their firm.

---

[1] Biomet retained Faegre in this litigation, but only after Thompson had already left the firm.

The decision whether to disqualify counsel rests in this Court's discretion. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1154 (8th Cir. 1999). In this circuit, motions to disqualify counsel are "subjected to particularly strict judicial scrutiny" because they have potential for abuse by opposing counsel. *Midwest Motor Sports v. Arctic Sales, Inc.*, 347 F.3d 693, 700-01 (8th Cir. 2003) (quoting *Harker v. Comm'r*, 82 F.3d 806, 808 (8th Cir. 1996)). The movant carries a "heavy burden," but any doubt should be resolved in favor of disqualification. *Commonwealth Land Title Ins. Co.*, 2009 WL 3069101, at *4 (quoting *Griffen by Freeland v. East Prairie, Mo. Reorg. Sch. Dist. No. 2*, 945 F. Supp. 1251, 1253 (E.D. Mo. 1996). This Court recognizes that disqualification is a "drastic measure which courts should hesitate to impose except when absolutely necessary," as disqualification "also serves to destroy a relationship by depriving a party of representation of their own choosing." *Id.* (quoting *Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 721 (7th Cir. 1982)); *see also City-County Taxi, Inc. v. Metropolitan Taxicab Comm'n*, No. 4:12-CV-408 JAR, 2013 WL 1867576, at *1 (E.D. Mo. May 3, 2012).

## III.   DISCUSSION

### A.  Waiver of Conflict

Plaintiffs contend that Biomet has waived any objection to Bachus & Schanker's alleged conflict. To prevent motions for disqualification from being deployed as a litigation tactic, a party should bring such a motion with reasonable promptness after learning of a conflict. *Terre Du Lac Prop. Owners' Ass'n, Inc. v. Shrum*, 661 S.W.2d 45, 48 (Mo. Ct. App. 1983). "A party who knowingly refrains from asserting a prompt objection to opposing counsel is deemed to have waived the objection." *Hettenbach*, 303 S.W.3d at 599 (citing *id.*); *see also Cent. Milk Producers Co-op. v. Sentry Food Stores, Inc.*, 573 F.2d 988, 992 (8th Cir. 1978) (finding waiver where party waited more than two years to object).

4

Plaintiffs argue that Biomet has waived any potential conflict by failing to object for 11 months after becoming aware of Thompson's employment at Bachus & Schanker in July 2019. Biomet responds that it did not learn of the alleged conflict until May 2020, when a Faegre Partner came across Thompson's biography on the Bachus & Schanker website. (Doc. 59-4 at ¶ 24). According to Plaintiffs, when Thompson applied for a position at Bachus & Schanker in July 2019, she requested that two Faegre attorneys (Sean Metherell and Rhyddid Watkins) serve as references. (Doc. 61-1 at ¶¶ 13-14). Thompson followed up to inform both attorneys that she received an offer. (*Id.* at ¶¶ 14-15). Thompson also notes that she is connected with a senior Faegre lawyer on LinkedIn, where she displays her employment at Bachus & Schanker. The question before this Court is whether these facts establish sufficient knowledge on behalf of Faegre and Biomet to constitute a waiver of any conflict in this case. While an 11-month delay can constitute a waiver in certain circumstances, this Court finds that Biomet did not have actual knowledge of Thompson's potential conflict until May 2020.

Plaintiffs' waiver argument rests entirely on the references provided by two Faegre attorneys and Thompson's LinkedIn profile. But one of the attorneys who provided Thompson a reference, Rhyddid Watkins, was no longer employed by Faegre when Thompson was hired by Bachus & Schanker. (Doc. 62 at 3). The other attorney, Sean Metherell, was an Associate in a different practice group who never worked for Zimmer Biomet and has no involvement in this case. (Doc. 62-2 at ¶ 2). Finally, this Court is unwilling to find that Thompson's LinkedIn page is sufficient to put Biomet or Faegre on notice of the potential conflict; Plaintiffs cite no precedent to the contrary.[2] Because Plaintiffs have not demonstrated that Biomet or its counsel had

---

[2] Thompson's connection on LinkedIn, Fagere Partner Patrick Reilly, has affirmed that he had no knowledge of Thompson's employment at Bachus & Schanker until June 2020. (Doc. 62-3 at ¶ 6).

knowledge of Thompson's potential conflict before May 2020, and the instant motion was filed

only one month later, there has clearly been no waiver.

    B.  Substantially Related Representations

To establish a disqualifying conflict under Missouri Supreme Court Rule 4-1.9, Biomet

must demonstrate that (1) Thompson had an attorney-client relationship with Biomet; (2) Biomet's

interests are materially adverse to the interests of Thompson's current client; and (3) the current

representation involves the same or a substantially related matter as Thompson's former

representation of Zimmer Biomet. *See Zerger & Mauer, LLP v. City of Greenwood*, 751 F.3d 928,

932 (8th Cir. 2014) (quoting *Polish Roman Catholic St. Stanislaus Parish v. Hettenbach*, 303

S.W.3d 591, 600-01 (Mo. Ct. App. 2010)). Thompson entered at least one appearance for Biomet

while employed at Faegre. It is also evident that Biomet's interests are materially adverse to

Bachus & Schanker's clients (*i.e.*, Plaintiffs). Therefore, the operative question before this Court

is whether this case involves a matter substantially related to Thompson's former representation

of Zimmer Biomet. Biomet has the burden of proving such substantial relationship. *A.J. by L.B. v.*

*Kierst*, 56 F.3d 849, 859 (8th Cir. 1995).

The Missouri Supreme Court has adopted the following non-exhaustive list of six factors

for determining whether matters are substantially related for conflict purposes:

> (1) [T]he case involved the same client and the matters or transactions in
> question are relatively interconnected or reveal the client's pattern of conduct;
> (2) the lawyer had interviewed a witness who was key in both cases; (3) the
> lawyer's knowledge of a former client's negotiation strategies was relevant; (4)
> the commonality of witnesses, legal theories, business practices of the client,
> and location of the client were significant; (5) a common subject matter, issues
> and causes of action existed; and (6) information existed on the former client's
> ability to satisfy debts and its possible defense and negotiation strategies.

*In re Carey*, 89 S.W.3d 477, 494 (Mo. banc 2002) (quoting *Chrispens v. Coastal Ref. & Mktg.,*

*Inc.*, 897 P.2d 104, 112 (Kan. 1995)). This Court agrees with the Missouri Supreme Court that

6

"[c]areful review of the facts at hand in relation to these six factors provides a specific framework for resolution of this case." *Id.*

### (1) Interconnected Matters and Pattern of Conduct

Biomet argues that Thompson's work on behalf of Zimmer Biomet in the Durom Cup MDL is substantially related to this case.[3] According to Biomet, the Durom Cup is a "[MoM] artificial hip implant just like the [Magnum]" and Thompson worked with the same in-house legal personnel at Zimmer Biomet as those involved in this litigation. (Doc. 59 at 12-13). Biomet also claims that Zimmer Biomet has adopted uniform settlement guidelines and legal strategies across its product liability cases, regardless of the particular entity involved. Plaintiffs respond by noting that Biomet has repeatedly highlighted the difference between the Durom Cup and Magnum litigation and challenged the "tendency to lump all [MoM] bearing[s] together." (Doc. 61 at 7). Plaintiffs cite ample evidence of Biomet's diligent efforts to distinguish the Durom Cup and Magnum. (*Id.* at 8).

This Court agrees with Plaintiffs that the Durom Cup and Magnum litigation are not relatively interconnected and do not reveal Biomet's pattern of conduct. As Judge Clark explained in *Bayes*, "Thompson's representation of Zimmer in Durom Cup matters involved an entirely different product, manufactured and sold by Zimmer when it was a direct competitor of Biomet, Inc." *Bayes*, 2020 WL 6680890, at *6. Biomet itself explained in the Magnum MDL that "the Magnum Actions – which involve a broad array of components that share the 'Magnum' name, are **not comparable to the *Durom* actions**, which involve a *single* component – an acetabular cup." (Doc. 61-4 at 20) (emphasis added). Biomet's claim that the Durom and Magnum litigation are related is expressly contradicted by its briefing before the MDL and various other prior

---

[3] This Court assumes without deciding that Zimmer and Biomet are the same "client" for purposes of this analysis. *See Commonwealth Land Title Ins. Co.*, 2009 WL 3069101, at *6 (considering law firm's prior representation of party "and its sister companies").

statements on the subject. Biomet cannot portray the Durom Cup and Magnum cases as similar only when it is convenient to do so. There is some indication, discussed further below, that Thompson's experience in the Durom Cup MDL may speak to Zimmer Biomet's overall pattern of conduct in product liability litigation. Accordingly, this Court finds that the first factor slightly favors Plaintiffs.

### (2) Witness Interviews

Biomet has offered no evidence that Thompson interviewed any witnesses to this litigation, let alone key witnesses. As Plaintiffs note, Thompson left Faegre two years before Faegre began representing Biomet in this litigation. This second factor substantially favors Plaintiffs.

### (3) Negotiation Strategies

Biomet claims that Thompson "[r]eceived training on Zimmer Biomet's methods in valuing [MoM] plaintiffs' claims as part of a settlement structure and performed valuation assessments for approximately fifteen [MoM] plaintiffs as part of settlement negotiations." (Doc. 59 at 5). Biomet contends that this training and experience is relevant because Zimmer Biomet's legal department is structured such that Zimmer and Biomet, Inc. employ similar negotiation strategies. This is somewhat comparable to *In re Carey*, where the attorney "helped formulate the decision matrix" used by Chrysler for assessing a given case and its settlement potential. *In re Carey*, 89 S.W.3d at 495. Comments to Missouri Supreme Court Rule 4-1.9 specifically provide, however, that "general knowledge of a client's policies and practices ordinarily will not preclude a subsequent representation." Mo. S. Ct. R. 4-1.9(a), cmt. 3.

Because this Court has determined that the Durom Cup and Magnum matters are not "relatively interconnected," it follows that any strategy applicable to Durom Cup negotiations will not necessarily be relevant to Magnum negotiations. This Court acknowledges, however, that

8

Thompson's training and experience regarding Zimmer Biomet's general negotiation strategies in product liability cases suggest a potential conflict. Therefore, this factor somewhat favors Biomet.

### (4) Commonality of Witnesses, Legal Theories, and Business Practices

Biomet's primary argument on this factor is that Thompson entered appearances in two cases where Zimmer Biomet opposed the expert opinions of Dr. George Kantor and Mari Truman, who are also experts for Plaintiffs in this litigation. (Doc. 59 at 5-6; Doc. 59-4 at ¶¶ 16-19). Biomet offers no evidence, however, that Thompson had any interactions with these experts. This minimal risk of conflict barely moves the needle.

As to commonality of legal theories and business practices, this Court has partially addressed these issues above. The legal theories in the Durom Cup and Magnum litigation are distinguishable, though there is some risk that Thompson learned of Zimmer Biomet's business practices and negotiation strategies. As noted by Judge Clark, however, the fact that Zimmer and Biomet, Inc. merged while Thompson was employed by Faegre is relevant. *Bayes*, 2020 WL 6680890, at *7. Unlike *In re Carey*, where a law firm merger created a conflict, "any commonality here is of Zimmer Biomet's own making" by choosing to merge and combine legal departments. *Id.* Thompson was a newly minted Associate at Faegre when Zimmer Biomet was formed; to impute her tenuous conflict as to Biomet, Inc. to any firm which subsequently hires her would unreasonably curtail clients' choice of counsel. *See* Mo. S. Ct. Rule 4-1.9, cmt. 4 ("If the concept of imputation were applied with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another and of the opportunity of clients to change counsel."). This factor is essentially neutral.

**(5) Common Subject Matter, Issues, and Cause of Action**

This Court has already concluded that the Durom Cup and Magnum matters are not "relatively interconnected" and accordingly has no difficulty concluding that they do not involve a common subject matter, issues, or cause of action. Biomet briefly claims that Thompson has "knowledge of Zimmer Biomet's settlement strategies, common expert witnesses, common legal theories, common subject matters, and common causes of action." (Doc. 62 at 11). But the litigation Thompson worked on at Faegre concerned an entirely separate product sold when Zimmer competed with Biomet, Inc. As discussed above, Zimmer Biomet's eventual decision to adopt a consistent litigation strategy across both the Durom Cup and Magnum cases cannot be relied upon to disqualify Bachus & Schanker here. This factor is neutral, if not favoring Plaintiffs.

**(6) Client Debt Satisfaction and Possible Defenses**

There is no suggestion that Thompson learned any information regarding Biomet's ability to satisfy its debts. There is some evidence, however, that Thompson learned of general settlement and valuation strategies which may apply across Zimmer Biomet. This is easily distinguished from *In re Carey*, where the attorneys actually helped formulate the client's formula for evaluating settlement options. 89 S.W.3d at 495. This factor is also neutral, if not slightly favoring Plaintiffs.

## IV.   CONCLUSION

Biomet faces a heavy burden in seeking the drastic remedy of disqualifying Plaintiffs' chosen counsel, Bachus & Schanker. It is apparent that Thompson performed meaningful work on the Durom Cup MDL while working as an early-tenured Associate at Faegre. Biomet does not claim that Thompson has worked on this case for Bachus & Schanker or divulged any confidential information regarding Biomet's legal strategies or settlement patterns. Instead, Biomet contends that Thompson's work for a separate entity (which falls under Zimmer Biomet) on an entirely

10

different product establishes a conflict which must be imputed to and result in the disqualification of Bachus & Schanker. This Court agrees with Judge Clark that this motion "does not present a close call." *Bayes*, 2020 WL 6680890, at *8.

Having carefully considered the *In re Carey* factors, this Court finds that Thompson's work on the Durom Cup MDL is not substantially related to this case. Factors one and two favor Plaintiffs, factor three slightly favors Biomet, and the remaining factors are neutral if not favoring Plaintiffs. It is true that "one factor, if significant enough, can establish that the subsequent case is substantially related," but there is no such significant factor here. The appearance of impropriety required for disqualification "must be more than a fanciful possibility." *In re Carey*, 89 S.W.3d at 494 (quoting *McCarthy v. John T. Henderson, Inc.*, 587 A.2d 280, 283 (N.J. Super. Ct. App. Div. 1996)). This Court finds that Biomet has alleged no more than the fanciful possibility of a conflict, and Thompson's work at Faegre does not require disqualification of Bachus & Schanker from this case.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Disqualify Bachus & Schanker LLC (Doc. 58) is **DENIED**.

Dated this 17th day of May, 2021.

_____
JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

11